No. 26.—T. O. WALKER *et al.* plaintiffs in error, *vs.* ELIJAH COOK, defendant in error.

[1.] By the Statute of 1854, the Courts are required to receive a material amendment, "at any stage of the cause." Where a demurrer to a bill is over-ruled and the bill sustained, the decision taken up by writ of error, and the judgment reversed: *Held,* that where the case is remitted generally, it is in " a stage of the cause" until the action of the Court below thereon, and is in order to be amended.

In Equity, in Harris Superior Court. Decision by Judge CRAWFORD, September Term, 1854.

This bill was filed by the plaintiffs in error, against the defendant in error, for the recovery of certain negroes and other property, under a marriage contract. A general demurrer, by defendant, being over-ruled, that decision was excepted to and carried to the Supreme Court. At Americus Term, 1854, this Court reversed that decision. (See the case reported in 15 *Ga. R.* .) At the next term of Harris Court, complainants moved to amend their bill, by alleging a mistake in the draftsman, and praying a reformation of the contract. Defendant's Counsel moved to make the judgment of the Supreme Court the judgment of the Superior Court, and a dismissal of the bill. The Court allowed the latter and refused the motion of complainants, to amend, on the ground that there was nothing to amend by. This decision is assigned as error.

The Court also granted an order directing the receiver, in this case, to deliver to Cook all of the property and the profits thereof. This decision is also assigned as error.

Judge BENNING having been of Counsel in this case, did not preside.

DOUGHERTY & INGRAM, for plaintiff in error.

S. JONES, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

An inspection of the record satisfies us, that (as we suggested when this case was argued before us,) the Court below placed the judgment, there, solely upon the ground, that as this Court had decided, when the cause was before us at Americus, that "the demurrer should have been allowed, and the bill dismissed" (to use the language of his Honor Judge CRAWFORD,) "there was nothing by which to amend; and to allow the amendment, would be the same as granting leave to file a new bill."

This being the language of this record, it certifies to us that the Court below did not consider and decide upon the sufficiency of the amendment offered. We prefer not to do so until full opportunity, both in the Court below and in this Court, is afforded for the discussion and consideration of the same. We shall therefore confine this judgment to the question, as to whether or not the Court was right in holding, that after the decision of this Court, reversing the judgment upon the demurrer, there was nothing in the Court below "by which to amend."

1. Let us examine this matter, first, upon common principles of Chancery practice. It will be found, by looking to our records, that our judgment simply *reversed* the judgment of the Court below sustaining the bill. That judgment was a decision over-ruling the demurrer, on the ground that there was equity in the bill. Our opinion was, that this should not have been done, because there was no equity in the bill. But as the bill had been sustained, and the case kept upon the records

of the Court below, and the revising Court had not ordered it to be dismissed; when the judgment of the latter Court went below, did it not place the case before the Chancellor there, as a case still in Court, but in which the law, by its supreme exponent, had said there was no equity? Was not the Chancellor, thus left to deal with it according to Law, and to that discretion which a chancellor has in the premises, and thus placed precisely where he would have been, if he had been of the opinion when first hearing the demurrer, that there was no equity in the bill? In such event, he might have dismissed the same; or if a legal amendment was offered, supplying the want of equity, he might have received it with or without terms, as to costs. This view derives support from the consideration, that it is the duty of a Chancellor to retain a bill and not drive the parties out of Court, if this can be justly done. This Court has so repeatedly decided. And we and other Courts have gone so far as to say, that it is sometimes the duty of a Chancellor to direct an amendment, (even where it is not formally moved,) rather than turn the parties out of Court. *Wade vs. Parker*, (2 *Keene*, 590.) *Roberts and Wife vs. West*, (15 *Ga.* 123.) In this view of the matter, it follows, that in the discharge of his duty, and exercise of his discretion as Chancellor, the Court below, upon the argument of the demurrer, might not have dismissed the bill, though he had decided, as we have said he should have decided, that there was no equity in the bill; but he might have allowed or directed an amendment.

There was, consequently, a plain propriety in putting the case again before him, so that he might thus exercise his duty in the premises.

2. But if this view be not correct on general principles, (and perhaps some contrariety of opinion on this subject has prevailed,) it is sustained and required by the Act of our last General Assembly, allowing amendments to be received at any stage of a cause.

We have said enough to show that the bill was not dismissed until the *remittitur* was presented in the Court below. If

anything more be needed, the proceeding there, of the defendant, shows this plainly enough. For when the complainant's Counsel moved his amendment, defendant's Counsel objected, and insisted that they were entitled, first, to move in the case; and they accordingly urged a right, first, to be heard therein; "when the case was called in its order." Thus, by the admission of the Counsel, the case was *there* in the Court, to be "called in its order;" and if this were so, it was in some *stage* thereof. It may have been their opinion, that it should have been considered in its last stage, but they treated it (and properly as we have shown) as in *a* stage of existence.

If, then, it were there in any stage of its proceeding, the Act of our last Legislature, which must be the law to us all, interposed and declared, when this amendment was offered, that it should be allowed "as matter of right".

The amendment offered must be, of course, a legal amendment—such an one as is admissible in such a case. Whether the amendment here tendered, is so or not, we do not decide; but leave this to be determined in the proper way, in the Court below.

As a sort of counter-guard against that encouragement to negligence which this free and unrestricted permission to amend might be supposed to extend unto parties and Counsel, this Statute provides, that if the party applying shall have been guilty of negligence, &c. the Court may compel him to pay his adversary the costs, and put him upon other reasonable and equitable terms, not touching the real interests of the cause. True, that the Chancellor might have done this previously in such a case, but the custom has grown very much into desuetude in our State, I believe. Courts, now, in administering this Statute, will probably feel the strong policy and propriety of enforcing this practice.

The judgment is therefore reversed, on the ground that the Court below erred in deciding that the bill could not be amended; it being the opinion of this Court, that the amendment should have been received, if upon consideration thereof the

·Chancellor had believed that it was a legal and proper amend-.ment in such a cause; subject, of course, to his right, in his discretion, to prescribe terms as to costs.